[Cite as *In re L.J.R.*, 2022-Ohio-3418.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: L.J.R. | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | Case No. 2022 CA 0030 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:            Appeal from the Richland County
                                    Court of Common Pleas, Juvenile
                                    Division, Case No. 2019 DEP 00200

JUDGMENT:                           Affirmed

DATE OF JUDGMENT:                   September 27, 2022

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

SARAH E. EXTEN                              BRIAN A. SMITH
Richland County Children Services           Brian A. Smith Law Firm, LLC
731 Scholl Road                             123 South Miller Road, Suite 250
Mansfield, Ohio 44907                       Fairlawn, Ohio 44333

*Baldwin, J.*

{¶1}    Appellant, A.R. appeals the decision of the Richland County Common Pleas Court, Juvenile Division, granting permanent custody to Appellee, Richland County Children's Services.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}    Richland County Children Services (RCCS) petitioned the trial court for an ex parte emergency order on June 2, 2021 and was granted emergency temporary custody of L.J.R. The following day RCCS filed a complaint alleging that L.J.R. was a neglected and dependent child. At a hearing on that complaint conducted July 13, 2021, the mother of L.J.R. and A.R., the father of L.J.R., acknowledged that he was a dependent child and stipulated to the trial court granting temporary custody to RCCS.

{¶3}    The complaint was based upon allegations regarding "the addiction to controlled substances, mental health problems, and related lifestyle issues of the parents." Consequently, RCCS proposed a case plan obligating Appellant to participate in substance abuse treatment, mental health treatment and to ultimately be able to provide for L.J.R.'s basic needs. After approximately seven months, RCCS concluded that A.R. failed to make significant progress toward resolving the problems that caused the removal of his child from the home and moved for permanent custody on January 5, 2022.

{¶4}    The motion for permanent custody was heard by a magistrate on April 7, 2022 with A.R. present and represented by counsel. The Magistrate found that L.J.R. had been placed with relatives under a safety plan arranged by RCCS on October 14, 2020 and remained with relatives until June 2, 2021 when he was placed in the emergency

shelter care of RCCS by the court. The trial court noted that RCCS prepared and submitted a case plan on July 2, 2021 that was adopted by the court by judgment entry filed July 28, 2021 and was designed to address issues of substance abuse and related mental health and lifestyle concerns with the primary issue being the impact of substance abuse on L.J.R.'s care.

**{¶5}** Appellant failed to make material progress toward resolving his substance abuse problems. During the administration of the case plan Appellant had positive test for heroin, cocaine, fentanyl, methamphetamines and other controlled substances. Appellant claimed that he had resumed treatment recently, but there is no record of completion of any substance abuse counseling. A.R.'s failure to complete substance abuse treatment was confirmed by the testimony of an RCCS representative, and by his own admission. The caseworker from RCCS testified that he did not make any progress toward resolving his mental health issues and A.R. conceded his failure:

Q All right. And um you've been involved with Children Services for him

since about um October of 2020, or--?

A Yes

Q All right. And a case plan was created based on that,--

A Yes.

Q --to help address some issues?

A Yes.

Q Um, some of those issues being drug addiction?

A Yes.

Q And uh some mental health issues?

A Yes.

Q Have you sought treatment for your drug addiction?

A Yeah.

Q Have you successfully completed treatment for your drug addiction?

A Uh, I started. I'm, I'm in it now.

Q Have you been successfully discharged?

A No.

Q Uh, have you sought treatment for your mental health issues?

A Yes.

Q Have you been successfully discharged from a treatment program?

A No.

Q Um, are you currently employed?

A No.

Q Do you currently have housing?

A Yes.

Q Of your own?

A No.

Q Um, were you terminated from Healing Hearts Treatment Center for drug treatment back in September of 2021?

A Yes.

Q Okay. Was that um because you were not consistent?

A I had stopped going.

Q Okay. Have you completed any parenting education?

A No

Trial Transcript, p. 88, line 17 to  p. 90, line 2.

{¶6}   A.R.'s case plan was approved in July 2021 and the motion for permanent custody was filed in January 2022, but A.R. started his current course of treatment for substance abuse only one month prior to the hearing. A.R. did not complain that he was unaware of the requirements of his case plan or that he had received insufficient time to make material progress, but only that he should be granted additional time.

{¶7}   The RCCS caseworker testified that the child's parents only sporadically contacted children's services over the course of the case plan. Neither parent had contact with the child in the ninety days prior to the hearing on the motion for permanent custody. The foster mother caring for L.J.R. confirmed that neither parent has visited the child since November 2021.

{¶8}   Appellant admitted it would not be in L.J.R.'s best interest for either of them to assume a child's care at this time.

{¶9}   L.J.R. has thrived since his placement in foster care. He was suffering anxiety prior to be placed in foster care, was aggressive toward his peers and very protective of his younger siblings. For some time after placement in foster care, L.J.R. would hoard food for himself and his siblings. The licensed adolescent therapist counseling L.J.R. noted that he has found safety and comfort in his foster placement and that his problematic behaviors have been moderated and some, such as the hoarding of food, have resolved. The witnesses confirmed that L.J.R. and his siblings have developed a significant bond with his foster parents who are, according to the witnesses, clearly

dedicated to the children's care. They are ready, willing and able to adopt L.J.R. and his siblings.

**{¶10}** The Magistrate found by clear and convincing evidence that it was in L.J.R.'s best interest to grant permanent custody to RCCS and that, by clear and convincing evidence, L.J.R. could not be placed with either of his parents within a reasonable period of time and should not be placed with the parents because following placement of the child outside the home and despite reasonable case planning and diligent efforts by RCCS, the parents continuously and repeatedly failed to substantially remedy the conditions causing L.J.R. to be placed outside his home. The trial court noted that both parents had failed to address the substance abuse and mental health issues that were present at the removal of the children and that it was not the best interest of the child for the parents to be granted additional time to resolve their issues, presumably due to their lack of any progress during the time between their removal from the home and the hearing on the motion. The trial court also noted that the parents had had no contact with L.J.R. since November 2021 and there was no record or evidence that they contributed to the child's financial support leading the Magistrate to find the parents had abandoned L.J.R.

**{¶11}** The trial court then analyzed the factors to consider the best interest of L.J.R. under the circumstances and found that all favor a grant of permanent custody and adoption by the foster parents. Trial court also found that RCCS made reasonable efforts to maintain the child in the home and that reasonable efforts were unsuccessful by reason of the parents continuing and insufficiently treated substance abuse and mental health problems.

**{¶12}** The Magistrate ordered that all residual parental rights of the parents with regard to L.J.R. terminated and permanent custody was granted RCCS. The trial court reviewed and approved the Magistrate's decision on the same date. No objections were filed to the Magistrate's decision.

**{¶13}** Appellant filed a timely appeal and submitted six assignments of error:

**{¶14}** "I. THE TRIAL COURT'S RULING THAT A GRANT OF PERMANENT CUSTODY TO APPELLEE WAS IN THE BEST INTEREST OF THE CHILD WAS AN ABUSE OF DISCRETION."

**{¶15}** "II. THE TRIAL COURT'S DECISION GRANTING APPELLEE'S MOTION FOR DISPOSITION AND AWARDING PERMANENT CUSTODY TO APPELLEE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶16}** "III. THE TRIAL COURT'S RULING, GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY, WAS IN ERROR, BECAUSE APPELLEE DID NOT SHOW THAT IT HAD MADE "REASONABLE EFFORTS" TO REUNITE THE FAMILY PURSUANT TO R.C. 2151.419."

**{¶17}** "IV. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO FILE OBJECTIONS TO THE MAGISTRATE'S DECISION CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHT TO COUNSEL UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

**{¶18}** "V. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO OBJECT TO THE LATE FILING OF THE CASE PLAN CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHT TO COUNSEL UNDER ARTICLE

I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶19} "VI. THE CUMULATIVE ERRORS OF APPELLEE'S TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHTS TO COUNSEL AND DUE PROCESS UNDER ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

## STANDARD OF REVIEW

{¶20} Appellant contends that the trial court's decision that the grant of permanent custody of L.J.R. to Appellee was in the best interest of L.J.R. was an abuse of discretion and that the disposition of permanent custody is against the manifest weight of the evidence.

{¶21} As to our standard of review, generally we review the trial court's decision in this context for abuse of discretion. We would examine the entire record and determine whether there is sufficient competent and credible evidence to support the judgment rendered by the trial court. *Seasons Coal Company v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1978). *Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The trial court must resolve disputed issues of fact and weigh the testimony and credibility of the witnesses. *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). We would defer to the trial court's discretion because the trial court had the opportunity to observe the witnesses and parties in weighing the credibility of the proffered testimony in a way a reviewing court cannot.

**{¶22}** Appellant failed to file objections to the Magistrate's decision and present the trial court with a copy of the transcript for review and those omissions alter our standard of review. As a result of Appellant's failure to file objections with the trial court, our review in this matter is limited to a consideration of plain error. Juvenile Rule 40(D)(3)(b)(iv) states: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." To constitute plain error in a civil case, the error must be "obvious and prejudicial" and "if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Friedland v. Djukic,* 191 Ohio App.3d 278, 2010–Ohio–5777, ¶ 37 (8th Dist.). Plain error analysis is limited and is to be applied with the utmost caution. *State v. Tart*, 8th Dist. Cuyahoga No. 76223, 2000 WL 739518.

**{¶23}** In addition, this Court has held on numerous occasions that where an appellant fails to provide a transcript of the original hearing before the magistrate for the trial court's review, the magistrate's findings of fact are considered established. *See, e.g., Moton v. Ford Motor Credit Co.,* 5th Dist. Richland No. 01 CA 74, 2002-Ohio-2857 (additional citations omitted). *Matter of B.J.,* 5th Dist. Richland No. 18 CA 106, 2019-Ohio-1062, ¶ 17. Our review is therefore limited to an analysis of the Magistrate's decision for plain error.

**{¶24}** Appellant also asserts that he received ineffective assistance of counsel in three assignments of error. To prevail on a claim of ineffective assistance of counsel, appellant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's

performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

## BURDEN OF PROOF

**{¶25}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re Smith, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶26}** An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean

clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶27}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶28}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

**{¶29}** (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

**{¶30}** (b) the child is abandoned;

**{¶31}** (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

**{¶32}** (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶33}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**ANALYSIS**

**I., II.**

**{¶34}** Appellant claims the trial court abused its discretion by finding that the grant of permanent custody of L.J.R. to Appellee was in the child's best interest and that the decision was against the manifest weight of the evidence. He offers his perspective of the evidence in support of those assignments of error, but Appellant does not contend that he was ready, willing and able to resume custody of his child, nor does he offer any argument that he will be in a position to provide a home for his child in the reasonable future. The record supports the conclusion that Appellant is not now capable of caring for his child as he has not resolved the problems that lead to the removal of L.J.R. from the home and his lack of progress in his mental health treatment and continued abuse of

drugs demonstrates that he cannot be expected to be prepared to assume responsibility for his child within a reasonable time. In fact, at the time of the hearing, Appellant admitted that it would not be in his child's best interest for him to assume L.J.R.'s care.

**{¶35}** Because Appellant failed to file objections to the Magistrate's decision and further did not submit a transcript to the trial court for its review, we are limited to reviewing this matter for plain error. The Supreme Court of Ohio has cautioned against the over application of plain error analysis.

> The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. *Schade,* 70 Ohio St.2d at 209, 24 O.O.3d at 317, 436 N.E.2d at 1003; *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 124, 512 N.E.2d 640, 643; *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327–328, 480 N.E.2d 794, 800.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 1997–Ohio–401, 679 N.E.2d 1099.

**{¶36}** The trial court based its grant of permanent custody on its conclusion that could not be placed with either parent within a reasonable time or could not be placed with the parents and that the parents abandoned L.J.R. We do find that the trial court did err with regard to its finding that L.J.R. was an abandoned child. The Magistrate found

that A.R. had not visited L.J.R. since late November or early December 2021. The motion for permanent custody was filed in January 2022 and the hearing was held in April 2022. The Magistrate found that the child was abandoned referring to R.C. 215l.414(B)(11) and R.C. 2151.011(C) measuring the time between the last visit and the hearing on the motion. "However, before a department initiates a motion for permanent custody on the grounds of presumed abandonment, we find 90 days must have passed without visit or contact before such motion can be initiated." *In re Scullion*, 5th Dist. Stark No. 2006CA00308, 2007-Ohio-929, ¶¶ 30-31. The trial court must consider the time between the motion and the last visit and determine whether that period fulfills the ninety day requirement of R.C. 215l.414(B)(11) and R.C. 2151.011(C), and in this case it does not. The time between the last visit, assuming it was in November, and the filing of the motion on January 5, 2022 was not ninety days. The finding of abandonment, therefore, is erroneous.

**{¶37}** Though we conclude the finding of abandonment was error, such error does not require reversal of the permanent custody determination under the two-issue rule. The trial court found an alternate, independent ground for terminating parental rights. The trial court found that L.J.R. could not be placed with either parent within a reasonable time or could not be placed with the parents. (R.C. 2151.414(B)(1)(a),(d)). The Magistrate concluded that L.J.R. cannot be placed with either parent within a reasonable time when he found that "following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially cause the child to be placed outside the home, the parents of their continuously and repeatedly to substantially remedy the

conditions causing the child be placed outside the child's home" concluding that the parents "despite some efforts, have failed to make sufficient efforts to comply with the case plan with regard to issues of substance abuse and mental health. By reason of the persistent nature of those issues in the insufficiency of the parent's efforts to address them, the presenting problems remain. It is not in the best interest of the child that the parents be granted additional time to resolve their issues." (Magistrate's decision, April 21, 2022, ¶ 15(A)).

**{¶38}** Magistrate also found the parents "demonstrated lack of commitment toward the child by failing to regulate support, visit or communicate with the child when able to do so or by other action showing an unwillingness to provide an adequate permanent home for the child" noting that the parents of had no contact with the child since November 2021 that there was no indication that they contributed to the child's management support and that the disruption of their continued drug abuse qualifies as other action showing unwillingness to provide an adequate permanent home for the child."

**{¶39}** The Magistrate's decision contains a thorough review of the facts that support the legal conclusions under R.C. 2151.411. The Magistrate found that L.J.R. was in the care of relatives and was only placed within emergency shelter care when the relatives became overwhelmed with the care of L.J.R. and his two siblings. Consequently, we find that placement with a relative was not a viable alternative to permanent custody as suggested by Appellant, as relatives had more responsibility than they were capable of handling when L.J. R. was added to the home.

**{¶40}** The placement with the relatives under the Appellee's supervision and the subsequent grant of emergency shelter care were necessary as a result of the parents'

"addiction to controlled substances, mental health problems, and related lifestyle issues." (Magistrate's Decision, ¶ 7). Appellee drafted a case plan to address these issues as the primary cause of the removal of L.J.R. from the home and the parents did seek treatment for substance abuse, but the unrebutted evidence, and A.R.'s admissions, supports the Magistrate's conclusion that Appellant had not successfully completed treatment. The trial court noted that the parents tested positive for heroin, cocaine, fentanyl, methamphetamine, and other controlled substances and that Appellant admitted that he had only recently resumed treatment for substance abuse. Further, there was unrebutted testimony that Appellant had not successfully engaged in mental health evaluation or treatment.

{¶41} The record shows that despite the fact that the case plan may have not been timely filed, Appellant was undoubtedly aware of the issues that needed to be resolved as demonstrated by his failed attempt to obtain treatment. Appellant did not object to the alleged delinquent filing of the case plan, never contended that he was unaware of the content of the case plan and failed for seven months to make material progress toward resolving substance abuse and mental health issues that lead to the removal of L.J.R. from the home. He offers no argument that he will be prepared to resume custody in a reasonable time and nothing in the record suggests that Appellant's habits will change materially in the foreseeable future despite the efforts of Richland County Children's Services.

{¶42} We find no plain error in the Magistrate's award of permanent custody to RCCS.

**{¶43}** The Magistrate considered L.J.R.'s best interest after reviewing the relevant factors specified under R. C. 2151.414 (D). In his analysis he reviewed the interaction and interrelationship with the child and found a fractured relationship with his parents due to their substance abuse. He noted that a strong bond existed between L.J.R. and his siblings.

**{¶44}** The trial court considered the wishes of the child with due regard for the child's age (ten years) and maturity level. The guardian ad litem confirmed that L.J.R. made a positive adjustment to his foster home and is aware and enthusiastic about adoption. He is currently well cared for and thriving in his foster home and the court found no reason to have him removed and placed elsewhere.

**{¶45}** The court considered custodial history of L.J.R. and noted that he had been in the care of foster parent since June 2, 2021 and had been in the primary care of his mother and, at times, Appellant from birth to October 14, 2020. The Magistrate also confirmed that "the need for legally secure permanent placement is important for all children." He found that Appellant had been unable to succeed in resolving the issues that caused the removal of the child from the home "because of the persistence of substance abuse but also because the parents' efforts have been insufficient." The Magistrate concluded it was unlikely that successful permanency can be achieved with either parent and that there were no extended family members willing or able to provide for the child's needs at least according to the information provided by children's services or the parents. The court concluded that a legally secure permanent placement can best be achieved by termination of parental rights and permanent placement with children

services for adoption, hopefully with the current foster parents who were apparently ready, willing and able to adopt L.J.R.

**{¶46}** The Magistrate conducted a thorough review of the facts and appropriately applied the law to determine L.J.R.'s best interest. We find no plain error has been committed by the court in granting permanent custody or finding that permanent custody was in L.J.R.'s best interest. Appellant's first and second assignments of error are overruled.

### III.

**{¶47}** Appellant contends that the Appellee failed to employ reasonable efforts to reunite him with L.J.R. as required by R.C. 2151.419, but fails to show that he brought this issue to the attention of the trial court during the hearing on permanent custody and, as previously noted, Appellant did not object to the Magistrate's finding that Appellee did satisfy the reasonable efforts requirement. Appellant never raised this issue at the trial court level and therefore, has waived it for purposes of appeal. This result is in accord with the general rule that an appellate court will not consider any error which the party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been corrected or avoided by the trial court. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 436 N.E.2d 1001, paragraph one of the syllabus, as quoted in *In re Miller*, 5th Dist. Licking No. 04 CA 32, 2005-Ohio-856, ¶ 21.

**{¶48}** Our decision would remain the same if we were to consider the merits of Appellant's argument. Overall, Ohio's child welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from

the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit, including the requirement that the agency prepare and maintain a case plan with the goal to eliminate the need for the out-of-home placement so that the child can safely return home (R.C. 2151.412) and the burden on the agency to prove it made reasonable efforts to prevent the child's removal. (R.C. 2151.419).

{¶49} The agency's duty to use reasonable efforts applies only to efforts to avoid removal of a child from their home or to reunify the child with the family following removal. *In re Warren*, 5th Dist. Stark No. 2007CA00054, 2007-Ohio-5703. While the agency did not have to show reasonable efforts at the permanent custody hearing, to the extent that the trial court relied on R.C. 2151.414(E)(1) at the permanent custody hearing, the court must examine the reasonable case planning and diligent efforts by the agency to assist the parents when considering whether the child cannot and should not be placed with the parent within a reasonable time. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 852 N.E.2d 816. The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety is paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

{¶50} The Magistrate found that the Appellee "made reasonable efforts to maintain the child in the home of the parent or to return the child home through case plan services designed to resolve [K H] and [A R] mental health and substance abuse issues."

The court further found that the efforts were unsuccessful as a result of the "parents continuing and insufficiently treated substance abuse and mental health problems" casting the blame for the persistent existence of those issues on insufficient efforts by the parents. Appellee provided a case plan, referrals to services, facilitation of visitation, attempted regular contact with the parents, the provision of drug screens, attempted facilitation of relative placement in transportation and the facilitation in support of foster placement. The efforts of the Appellee are not unreasonable simply because Appellant suggests Appellee could have provided more encouragement for him to comply with the services provided.

{¶51} We hold that A.R. has waived this assignment of error by failing to address it at the trial court level. A.R.'s third assignment of error is overruled.

### IV., V., VI.

{¶52} Appellant's fourth, fifth and sixth assignments of error focus upon allegations of ineffective assistance of counsel. Appellant claims trial counsel was ineffective for failing to file objections to the Magistrate's decision, failing to object to the late filing of the case plan and that the cumulative errors of trial counsel constituted ineffective assistance of counsel.

{¶53} With regard to the failure to object to the Magistrate's decision, Appellant claims that he was "severely prejudiced" and that "but for counsel's unprofessional error, the outcome of the proceeding would have been different." (Appellant's Brief, page 23). While we agree that filing objections as well as a transcript may have resulted in a more favorable standard of review, Appellant's conclusion that the "outcome of the proceeding would have been different" is no more than unsupported speculation. Appellant does not

demonstrate how the outcome of the appeal would have changed in his favor had the assignments of error been subject to an abuse of discretion standard of review rather than plain error. While we will acknowledge that the standard of review would be different, we will not speculate as to the outcome and we will not assume Appellant's argument. *State ex rel. Petro v. Gold*, 10th Dist. No. 04AP-863, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 94.

{¶54} Appellant also contends he received ineffective assistance of counsel as a result of his trial counsel's failure to object to the alleged delinquent filing of the case plan. Appellant focuses upon the fact that the case plan was due to be filed on July 2, 2021 and was not filed until July 6, 2021 and that there is no evidence within the record establishing that Appellant received the case plan. Appellant suggests that had there been an objection, the trial court could have addressed the issue "perhaps by ordering appellee to provide a copy of the case plan sooner, take more proactive steps to make sure father was connected resources to support him in meeting the goals of the case plan, or even dismiss the complaint." (Appellant's Brief, page 22). First, we find that the record supports through circumstantial evidence that Appellant received adequate notice of the problems that caused the removal of L.J.R. from his home and that he was obligated to work toward resolving those problems as part of this case plan. Appellant does not refer us to any place in the record where he complained of a delinquent delivery of the case plan or a misunderstanding of what was required of him. Further, we are unwilling to accept Appellant's speculation that the decision of the court would have been in his favor in any sense had the objection been raised.

**{¶55}** To demonstrate prejudicial ineffective assistance of counsel, Appellant must show a "reasonable probability that but for counsel's errors, the result of the trial would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694. While appellate counsel may have addressed these issues differently had he been trial counsel, the arguments presented do not demonstrate a reasonable probability that the result of the trial would have been different had trial counsel filed objections to the Magistrate's decision or objected to the case plan. We do not find that Appellant has demonstrated ineffective assistance of counsel and therefore Appellant's sixth assignment of error alleging a cumulative error argument based upon ineffective assistance of counsel is unsupported by the facts.

**{¶56}** Appellants fourth, fifth and sixth assignments of error are overruled.

{¶57} The decision of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Hoffman, J. concur.