OPINION *Page 2 
{¶ 1} On July 1, 2003, appellee, the Tuscarawas County Department of Job and Family Services, filed a complaint alleging Tabbetha McCallum born October 14, 1992, Scott McCallum born July 15, 1994 and Ashley Horstmann born November 15, 2002 to be abused, neglected and dependent children.[1] Mother of the children is Paula Colberg; father of Tabbetha and Scott is John McCallum and father of Ashley is Ms. Colberg's husband and appellant, Hans Horstmann. An adjudicatory hearing before a magistrate was held on August 14, 2003. By decision filed August 22, 2003, the magistrate found Scott to be abused and neglected and Tabbetha and Ashley to be dependent. A dispositional hearing was held on August 27, 2003. By decisions filed September 3, 2003, the magistrate entered findings of fact and conclusions of law on the adjudicatory decision, and recommended temporary custody with appellee. Objections were filed. On September 30, 2003, following a hearing and a home study review, temporary custody of Tabbetha and Ashley was granted to appellant's brother and wife, Bill and Tonya Horstmann. By judgment entry filed January 20, 2004, the trial court approved and adopted the magistrate's September 3, 2003 decisions.
 {¶ 2} Two six month extensions were granted to appellee. On June 1, 2005, appellee filed a motion to modify the prior disposition, requesting legal custody of Tabbetha and Ashley be granted to the Horstmanns. A hearing before a magistrate was held on January 24, 2006. By decision filed February 24, 2006, the magistrate recommended the best interests of Tabbetha and Ashley would be best served by granting legal custody to Bill and Tonya Hortsmann. Appellee's involvement would be *Page 3 
terminated and the case would be closed. By judgment entry filed June 26, 2006, the trial court approved and adopted the magistrate's decision.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE JUVENILE COURT ERRED BY CONDUCTING THE HEARING ON THE MOTION TO MODIFY BEYOND THE TWO YEAR TIME LIMIT SET FORTH IN JUVENILE RULE 14."
 II {¶ 5} "THE JUVENILE COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 III {¶ 6} "THE JUVENILE COURT ERRED IN GRANTING LEGAL CUSTODY TO A RELATIVE BECAUSE SAID DETERMINATION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO MEET THE STANDARD OF PROOF."
 IV {¶ 7} "THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY ABUSING ITS DISCRETION IN GRANTING LEGAL CUSTODY OF THE MINOR CHILD(REN) TO THIRD PARTY INDIVIDUALS."
 I {¶ 8} Appellant claims the trial court erred in conducting the modification hearing beyond the two year time limit set forth in Juv.R. 14. We disagree.
 {¶ 9} Juv.R. 14(B) states the following: *Page 4 
 {¶ 10} "Upon the filing of an agency's motion for the extension of temporary custody, the court shall schedule a hearing and give notice to all parties in accordance with these rules. The agency shall include in the motion an explanation of the progress on the case plan and of its expectations of reunifying the child with the child's family, or placing the child in a permanent placement, within the extension period. The court may extend the temporary custody order for a period of up to six months. Prior to the end of the extension period, the agency may request one additional extension of up to six months. The court shall grant either extension upon finding that it is in the best interest of the child, that there has been significant progress on the case plan, and that there is reasonable cause to believe that the child will be reunited with one of the child's parents or otherwise permanently placed within the period of extension. Prior to the end of either extension, the agency that received the extension shall file a motion and the court shall issue one of the orders of disposition set forth in division (A) of this rule. Upon the agency's motion or upon its own motion, the court shall conduct a hearing and issue an appropriate order of disposition."
 {¶ 11} The trial court granted appellee two extensions. Appellant argues the deadline following the second extension was June 30, 2005. Appellant's Brief at 4. Appellant argues appellee filed a motion on June 1, 2005 in a timely manner, but the trial court did not "issue an appropriate order of disposition" by the deadline therefore, the legal custody order is "void or voidable." Id.
 {¶ 12} In In re Young Children, 76 Ohio St.3d 632, 1996-Ohio-45, syllabus, the Supreme Court of Ohio specifically stated, "The passing of the statutory time period ('sunset date') pursuant to R.C. 2151.353(F) does not divest juvenile courts of *Page 5 
jurisdiction to enter dispositional orders." The Young court at 638 reasoned, "because the court retains jurisdiction over the child, it may make further dispositional orders as it deems necessary to protect the child. We believe the General Assembly granted continuing jurisdiction to the courts for just this reason." The Young court concluded, "Thus, we hold that when the sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child." Id.
 {¶ 13} The problems that led to the original grant of temporary custody had not been resolved by the time the trial court made its dispositional order. The treatment of the children and the medical "diagnosis" of Munchausen Syndrome by Proxy and its applicability to the case sub judice were still very much in issue.
 {¶ 14} Appellant also claims the trial court erred in granting legal custody of Ashley to Bill and Tonya Horstmann pursuant to R.C.2151.353(A)(3) because the legal custody motion was filed by appellee, not the Horstmanns.
 {¶ 15} In her decision filed February 24, 2006, the magistrate acknowledged the hearing was on the "Motion to Modify Prior Disposition," and then stated it would be in Ashley's best interest to be placed in the legal custody of Bill and Tanya Horstmann "pursuant to Revised Code Section 2151.353(A)(3)." Said section permits an award of legal custody to either parent or to anyone who, prior to the dispositional hearing, files a motion requesting legal custody. R.C.2151.415 governs modification and termination of prior dispositional orders. Subsection (A)(3) permits a public children services agency to file a motion for an "order that the child be placed in the legal custody of a *Page 6 
relative or other interested individual." Said section does not require the relative or other interested individual to first file a motion for legal custody.
 {¶ 16} The dispositional hearing in this case was held on August 27, 2003. The Horstmanns were granted temporary custody of Ashley. On June 1, 2005, appellee filed a motion to modify the prior disposition, seeking legal custody to the Horstmanns. Because the motion was filed after the August 27, 2003 dispositional hearing, it was a motion to modify the prior dispositional order and R.C. 2151.415(A)(3) applies sub judice.
 {¶ 17} The underlying rationale of R.C. 2151.353(A)(3) is to afford all parties the opportunity to receive adequate notice of all potential custodians. In re Moorehead (1991), 75 Ohio App.3d 711, 717. The Horstmanns were granted temporary custody of Ashley on September 30, 2003 and the hearing on the motion to modify was held on January 24, 2006 with appellant present. Appellant participated in the hearing and was aware the Horstmanns were potential custodians as appellant had acquiesced to the temporary custody arrangement. See, Judgment Entry filed September 30, 2003. The trial court's reference to R.C.2151.353(A)(3) constitutes harmless error. Civ.R. 61.
 {¶ 18} Assignment of Error I is denied.
 II {¶ 19} Appellant claims the trial court's decision was against the manifest weight of the evidence. We disagree.
 {¶ 20} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Page 7 
 Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 21} During the adjudicatory hearing, the children's pediatrician from Texas, Michael Austin, M.D., testified he was very concerned with the treatment of Ms. Colberg's son, Scott. When Scott first saw Dr. Austin, Scott was on seventeen or eighteen different medications, "a lot of them were duplicate, a lot of them seemed out and out unnecessary." August 14, 2003 T. at 47. Previous pediatricians from Oklahoma had diagnosed Scott with a mild form of asthma and a mild form of OTC, an enzyme deficiency associated with the inability to break down proteins in the body. Id. at 10-11. On numerous occasions, Ms. Colberg presented Scott to Dr. Austin complaining of "severe respiratory distress, had turned blue." Id. at 9. Dr. Austin examined Scott and found him to be perfectly normal, and never heard a "single wheeze which would be unusual." Id. A couple of times, Scott was checked by Dr. Austin's nurse for "severe respiratory distress" and Ms. Colberg was told Scott was fine; thereafter, Ms. Colberg left the office and took Scott to the emergency room. Id. 20. Ms. Colberg told Dr. Austin Scott had a history of liver metabolic coma which Dr. Austin found to be untrue after reviewing his medical records and talking to Scott's doctors in Oklahoma. Id. at 16. Dr. Austin agreed Scott suffered from behavioral and emotional problems, but opined the reason may be due to the fact that he has been told that "he is fragile and that he is not normal and that he isn't going to be like other kids and that he could die. And I think it's pretty easy to see how that would affect your emotional *Page 8 
psyche." Id. at 23. Dr. Austin explained Scott has "been tested academically and found to be of normal intellect and normal function but developmentally, he is not on par with his class level because he has missed so much school." Id. The school had been given doctor's excuses for multiple days in which Scott had not been seen in Dr. Austin's office, and it was Dr. Austin's belief that the excuse pack was stolen from his office. Id. at 19. Dr. Austin opined Ms. Colberg demonstrated signs of Munchausen Disease by Proxy, "exaggerating the symptoms of someone that you care for in a way that leads to medical care that could be deemed abusive." Id. at 25.
 {¶ 22} During the dispositional hearing, Ms. Colberg's expert, Dr. Rajendra Misra, who performed psychological evaluations on Ms. Colberg, testified she did not meet the criteria for Muchausen Syndrome by Proxy. January 24, 2006 T. at 6. Dr. Misra explained the syndrome is not a recognized diagnostic category in the diagnostic manual of the American Psychiatric Association, and "one of the criteria here is that the person does not have any other mental disorder. In this particular case, Ms. Colberg did meet the criteria of another mental disorder." Id. at 7. Dr. Misra also explained the "syndrome" can show up in the oldest, it can show up in the youngest and it can switch. When the youngest child or the oldest child is removed * * * it can be seen in the other child or another dependent person." Id. Dr. Misra opined he is "ninety-nine percent confident" Ms. Colberg does not suffer from the disorder. Id. at 7-8. Dr. Misra agreed although Ms. Colberg may not have Muchausen Syndrome by Proxy, her actions may be caused by other reasons such as "financial incentives" i.e, social security and welfare benefits for the "special" needs of the child. Id. at 26-27. *Page 9 
 {¶ 23} Beth Bertini, the family's ongoing case manager, admitted that although both Ms Colberg and appellant participated in the case plan services and completed those services, "there's not been any changes." Id. at 57, 58. Ms. Bertini explained, "[t]he parents, neither one of them, recognize they believe that the agency was only, should not be involved in their lives, they did nothing wrong and had we done our job, the children would have never been removed." Id. at 59. Both Ms. Colberg and appellant have not addressed the issue, the issue being "the concern of care that Paula gave to the children or lack of." Id. at 60. Ms. Bertini testified if the children were returned home, she did not believe anything would change from the problems of two and one-half years ago. Id. Ms. Bertini was unconcerned as to whether Ms. Colberg suffers from Munchausen Syndrome by Proxy as the children were put at risk and the problems have not been alleviated. Id. at 60-61. While it is Ms. Colberg's actions that have placed the children at risk, appellant has "anger issues that, if I recall, I thought he had therapy for those or assessment on that. He still displays those types of behaviors and the fact that he's unable or unwilling to recognize the risk to the children based on the concerns of the agency." Id. at 63. Appellant told Ms. Bertini he does not think there is a problem. Id. Appellant is one of the "more angrier" parents Ms. Bertini has seen in eight years of dealing with families. Id. at 78. Ms. Bertini stated, "I've had better response from, less anger from parents that I have taken permanent custody of their children than from Hans." Id. Ms. Bertini testified Tabbetha and Ashley have been living with the Horstmanns since October of 2004, and they have done very well there. Id. at 49. *Page 10 
 {¶ 24} In her February 24, 2006 decision granting legal custody of Ashley to the Horstmanns, the magistrate found the following:
 {¶ 25} "Whether or not Paula Colberg has `Munchausen's Syndrome by Proxy' is not the issue. Paula Colberg's treatment of her son, to the point of abusiveness is the factual history here. This child was so emotionally damaged it seemed impossible that he could be maintained outside a residential treatment facility. Until there is recognition by Paula Colberg and Hans Hortsmann that her prior conduct severely damaged this child, those past issues remain unresolved. The children will continue to be at risk in her care as Paula Colberg and Hans Horstmann think her past parenting was appropriate."
 {¶ 26} Based upon a review of the record, we find relevant, competent and credible evidence to support the trial court's decision to place Ashley in the legal custody of the Horstmanns. Appellant and/or Ms. Colberg have not lost the permanent custody of the children. They may request a custody modification in the future.
 {¶ 27} Assignments of Error II, III and IV are denied. *Page 11 
 {¶ 28} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby affirmed.
 Farmer, J., Hoffman, P.J. and Edwards, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is affirmed.
[1] Ashley is the focus of this appeal. *Page 1