[Cite as *In re Baby Girl O.*, 2023-Ohio-4323.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: BABY GIRL O. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. 2023 AP 04 0029 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County
                             Court of Common Pleas, Juvenile
                             Division, Case No. 23JN00045

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            November 30, 2023

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JEFFREY M. KIGGANS                        DAN GUINN
Tuscarawas County Job and Family Services Guinn Law Firm
289 16th St., SW                          232 West 3rd Street
New Philadelphia, Ohio 44663              Suite 312
                                          Dover, Ohio 44622

*Baldwin, J.*

**{¶1}** Appellant K.O., mother of Baby Girl O, appeals the March 31, 2023 decision of the Tuscarawas County Juvenile Court awarding permanent custody of Baby Girl O to appellee Tuscarawas County Job & Family Services.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** The appellant, who was involved in a toxic and abusive relationship with her paramour and has a history with children services, had another minor child named K.J. placed into the permanent custody of the appellee in December 2022, approximately two months prior to the February 9, 2023 birth of Baby Girl O. Baby Girl O and K.J. are siblings.

**{¶3}** A shelter care hearing was held shortly after Baby Girl O's birth. The court found that reasonable grounds existed to justify the holding of Baby Girl O in substitute care, and that it was in the best interests of the child to do so. The court further found that emergency circumstances existed, and that immediate removal was necessary to protect the child. The child was thus placed in the temporary custody of the appellee.

**{¶4}** An adjudication was held on March 8, 2023, following which the trial court found Baby Girl O to be a dependent child, and scheduled a disposition hearing on March 29, 2023.

**{¶5}** On March 9, 2023, the appellee filed a Motion for Hearing on the Need to Expend Reasonable Efforts to Reunify. On March 27, 2023, the trial court conducted a hearing on the appellee's motion. The trial court issued a judgment entry on March 28, 2023 in which it found that the appellant had her parental rights relating to her child K.J. terminated on December 2, 2022. The trial court further found, based upon R.C.

2151.419(A)(2)(e), that the appellee was not required to use reasonable efforts to reunify Baby Girl O with the appellant due to the prior involuntary termination.[1]

**{¶6}** On March 29, 2023, a disposition hearing was conducted regarding permanent custody of Baby Girl O. The trial court, stating that it was mindful that permanent custody should only be awarded in extreme cases, issued a judgment entry on March 31, 2023 in which it found by clear and convincing evidence as follows: that the appellant had another child permanently removed from her custody in December 2022; that the case plan services were not successfully completed by the appellant in the previous permanent custody case; that the concerns that led to the December 2022 removal of K.J. from the appellant's custody, particularly regarding domestic violence, were not remedied; that numerous incidents of domestic violence had occurred at the appellant's home between January 12, 2023 and March 19, 2023; that the appellant had failed to show that she could provide a safe, stable and secure environment for Baby Girl O; and, that Baby Girl O should be placed into the permanent custody of the appellee.

**{¶7}** The appellant filed a timely appeal of the trial court's March 31, 2023 decision in which she sets forth the following two assignments of error:

**{¶8}** "I. THE APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HER RIGHTS UNDER THE 5th, 6th AND 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

---

[1] The appellant did not appeal the trial court's March 28, 2023 judgment entry, nor did she provide a transcript of the March 27, 2023 hearing.

{¶9} "II. THE COURT ERRED IN AWARDING PERMANENT CUSTODY OF THE CHILD TO THE APPELLEE."

## ASSIGNMENT OF ERROR NUMBER 1

{¶10} The appellant argues in her first assignment of error that she was deprived of the effective assistance of counsel. We disagree.

## Standard Of Review

{¶11} This Court addressed ineffective assistance of counsel in permanent custody cases in *In re A.G.,* 5th Dist. Tuscarawas Nos. 2013 AP 07 0030, 2012 AP 10 0059, 2013-ohoi-5696, as follows:

> This Court has recognized "ineffective assistance" claims in permanent custody appeals. See, e.g., *In re Utt Children,* 5th Dist. Stark No.2003CA00196, 2003–Ohio–4576. Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, " * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." *In re Wingo,* 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), quoting *In re Heston,* 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). Our standard of review for an ineffective assistance claim is thus set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *In re Fell,* 5th Dist. Guernsey No. 05 CA 8, 2005–Ohio–5790, ¶ 11.

*Id.* at ¶19.

**{¶12}** The standard of review for ineffective assistance of counsel set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), was discussed by this court in *Mansfield v. Studer,* 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840:

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838 (1993); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct.

at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether

counsel's assistance was reasonable considering all the circumstances."

*Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all

points, "[j]udicial scrutiny of counsel's performance must be highly

deferential." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at

2064.

*Studer, supra,* at ¶¶ 58-61.

**{¶13}** Thus, in order to prevail on an ineffective assistance of counsel argument

the appellant must show both: 1) that trial counsel's performance fell below an objective

standard of reasonable representation involving a substantial violation of an essential

duty to the appellant; and, 2) that the appellant was prejudiced by the alleged

ineffectiveness. Prejudice means that but for counsel's failure to object, the result of the

proceeding would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538

N.E.2d 373, paragraph three of the syllabus.

**Analysis**

**{¶14}** The appellant argues that her trial counsel was ineffective because she

failed to object to "numerous instances of hearsay"; and, that trial counsel only presented

the appellant's testimony "after prodding by the Court," focused the mother's testimony

on alternative placement for Baby Girl O, and did not inquire as to the appellant's efforts

to keep her paramour from her, thus protecting Baby Girl O from an environment of

domestic violence.

**{¶15}** The decision regarding whether to object to certain evidentiary items or

pursue a course of inquiry does not arise in a vacuum, but rather, is a strategic decision

undertaken by trial counsel after evaluating the specifics of each case. The mere fact that

counsel did not object to specific pieces of evidence or pursue certain lines of inquiry does not mean the representation fell below the objective standard of reasonable representation. In this case, appellant's trial counsel may have thought admission of the police reports was preferable to the live testimony of law enforcement officers, which may have been more damaging to the appellant's case. Further, the failure to ask the appellant about her efforts to separate from her abusive paramour may also have been strategic, particularly in light of prior testimony and other evidence that may have discredited the appellant. Such speculation cannot provide a basis for establishing that representation fell below an objective standard of reasonable representation. This is particularly true in this case, as the trial court had already determined that the appellee was not required to undertake reasonable efforts to reunify.

{¶16} Moreover, the appellant had been involved in numerous incidents of domestic violence as recently as ten days prior to the disposition hearing. Further, in addition to the police reports outlining incidents of domestic violence in the appellant's home, the Guardian Ad Litem testified at the March 29, 2023 disposition hearing that the appellant failed to demonstrate she would stay away from her abusive paramour. There is simply insufficient evidence in this case to establish that the outcome would have been different had the appellant's trial counsel objected to hearsay evidence and/or questioned the appellant differently. This issue was discussed in *In re A.G., supra*:

>    We are also unwilling to find trial counsel ineffective on the basis of
>    failure to object to hearsay testimony and leading questions and failure to
>    make a closing argument. It would not be possible for the best-spoken
>    counsel to change the underlying facts, much less Mother's apparent

obstinacy in continued involvement with domestic violence offenders. As Mother herself acknowledges on appeal, " * * * the record is devoid of any material to establish anything other than [Mother] has used lousy judgment in her selection of men in the past." This "lousy judgment" has subjected her children to physical abuse, and although Mother refuses to acknowledge it, apparent sexual abuse.

Mother has therefore failed to establish the result of the proceeding would have been different but for counsel's alleged errors and her first assignment of error is overruled.

*Id.* at ¶¶ 23 – 24.

**{¶17}** In demonstrating prejudice due to ineffective assistance of counsel in permanent custody hearings, the appellant must prove that there exists a reasonable probability that but for counsel's errors the result of the disposition hearing would have been different. We find that the appellant has failed to show that the outcome would have been different had her trial counsel objected to alleged hearsay and questioned her about her purported efforts to separate from her abusive paramour. As such, we find the appellant's first assignment of error regarding ineffective assistance of counsel to be without merit. Accordingly, the first assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER 2

**{¶18}** The appellant next argues that the trial court erred in awarding permanent custody of Baby Girl O to the appellee. We disagree.

**Standard Of Review**

{¶19} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.* An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

{¶20} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]hat measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954); *In the Matter of: J.P.*, 5th Dist. Stark No. 2019CA00119, 2019-Ohio-4972, ¶19.

{¶21} A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins*, 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, ¶ 17, citing *Cross, supra*. Accordingly, judgments supported by some

competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.

### Analysis

{¶22} The appellant submits in her second assignment of error that she should have had an opportunity to complete a case plan regarding Baby Girl O, and to demonstrate that her paramour was no longer an issue in the case. However, the trial court's March 28, 2023 judgment entry held that the appellee was not required to use reasonable efforts to reunify Baby Girl O, and thus a case plan was no longer required. The appellant did not appeal the March 28, 2023 judgment entry.

{¶23} R.C. 2151.419 addresses permanent custody hearings, and states in pertinent part:

(A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child

from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:

*      *      *

(e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections.

**{¶24}** The appellant's child, K.J., a sibling of Baby Girl O, was removed from her custody and her parental rights involuntarily terminated approximately two months prior to the birth of Baby Girl O. The circumstances leading up to the award of permanent custody of K.J. to the appellee persisted, and the appellant failed to demonstrate that she would effectively remedy them. In fact, there was clear and convincing evidence that the circumstances remained and would not be remedied. The trial court determined prior to

the disposition hearing that the appellee was not required to use reasonable efforts to reunify Baby Girl O with the appellant due to the prior involuntary termination. Thus, the fact that she was not afforded the opportunity to complete a case plan to show that the paramour was no longer at issue.

**{¶25}** Furthermore, while the appellant testified regarding her preferred foster placement for Baby Girl O, placement of the child is not her decision to make. The agency determines placement based upon a variety of factors, including but not limited to placement with foster families who have completed the licensure process. We find that the trial court correctly determined that Baby Girl O should be placed in the permanent custody of the agency.

**{¶26}** Based upon the foregoing, the appellant's second assignment of error regarding the award of permanent custody of Baby Girl O to the appellee is without merit. Accordingly, appellant's second assignment of error is overruled.

**CONCLUSION**

{¶27}  We find that the trial court's decision to award permanent custody of Baby Girl O to appellee TCJFS was in Baby Girl O's best interest, was based upon competent, credible evidence, and is not against the manifest weight or sufficiency of the evidence. The evidence contained in the record supports the trial court's judgment. We therefore overrule the appellants' assignments of error, and affirm the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division.

By: Baldwin, J.

Gwin, P.J. and

King, J. concur.