[Cite as *In re E.G.*, 2024-Ohio-2043.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: E.G. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| | : | |
| | : | Case No. 2023CA00139 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2023JCV00603 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | May 23, 2024 |

APPEARANCES:

For Parents-Appellants:

RICHARD D. HIXSON
3808 James Court, Suite 2
Zanesville, OH 43701

GUARDIAN AD LITEM:

KAYLA MASZCZAK
401 Tuscarawas St. W., Suite 201
Canton, OH 44702

For Appellee Stark Co. JFS:

JAMES B. PHILLIPS
402-2nd St. SE
Canton, OH 44702

*Delaney, P.J.*

{¶1} Appellants S.G. and E.B. ("Parents") appeal from the October 17, 2023, Findings of Fact and Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, granting permanent custody of their minor child E.B. (DOB 6/5/2023) to appellee Stark County Job and Family Services ("Agency").

## FACTS AND PROCEDURAL HISTORY

{¶2} E.G. was born on June 5, 2023, and is the natural child of Parents. On June 7, 2023, the Agency filed a complaint alleging dependency and seeking permanent custody of the child.

*Facts alleged in permanent custody complaint*

{¶3} The following facts are adduced from the permanent custody complaint. The family has a prior history of Agency involvement arising from inorganic failure to thrive, Parents' intellectual limitations, domestic violence between Parents, and Father's anger management issues. Parents' older child (Sibling) was found to be dependent in July 2020; Parents were given a case plan to reduce the risks they posed to the child; and Parents failed to successfully complete the case plan. Sibling was placed in the Agency's permanent custody in November 2021 following a contested trial.

{¶4} Parents were both required as part of the case plan in the prior case to complete a parenting assessment and to attend Goodwill Parenting. Parents were referred to Lighthouse Family Center but Father caused a disturbance at Mother's first appointment and both were refused service, so the referral was transferred to Melymbrosia. Both Parents did complete parenting assessments at Melymbrosia, and both were found to suffer from limited intellectual functioning. Father was found to be in

the extremely low range of functioning with a full-scale IQ of 63. Father suffered a traumatic brain injury as a child that impacts his functioning. Mother had a full-scale IQ of 81. The examiner recommended that both parents complete parenting classes and only receive supervised visitation until successful completion of parenting instruction and demonstration that both could understand the child's medical issues. Neither Parent achieved this outcome or moved past supervised visits by the date of Sibling's permanent custody trial.

{¶5} The examiner was concerned about Father's ability to regulate his emotions and recommended counseling. Father refused to sign a release for his counselor. Father did attend some anger management counseling through Melymbrosia but was unable to demonstrate progress outside a therapeutic setting. Father demonstrated the inability to regulate his emotions and control his anger. Mother reported domestic violence between herself and Father, but later recanted this allegation.

{¶6} Both parents were referred to Goodwill Parenting; Father refused to attend the program, and Mother attended but received a certificate of non-compliance. Mother did not successfully complete her goals and refused to accept responsibility for her actions that led to removal of the child. Concerns existed with Mother's care of the child during visits despite extensive modeling of appropriate behavior. The instructor did not recommend that Mother be reunified with the child.

{¶7} Both Parents have static intellectual and behavioral deficits that prevent them from safely parenting a child.

{¶8} Father was found guilty of disorderly conduct in April 2023; the offense was originally telecommunications harassment and intimidation of a crime victim or witness.

Father threatened a Canton City prosecutor because she was prosecuting his brother. Father has past convictions for dissemination of certain images to a juvenile, telecommunications harassment, violation of a protection order, domestic violence, procuring, disorderly conduct, and assault.

*Procedural history of the instant case*

{¶9} On June 8, 2023, the trial court held an emergency shelter care hearing and found probable cause for the issuance of emergency orders and placed the child in the emergency temporary custody of the Agency. The trial court also made a reasonable efforts finding.

{¶10} On July 5, 2023, the trial court found service had not been perfected on John Doe and set the adjudication trial to run concurrent with the permanent custody trial scheduled for August 21, 2023.

{¶11} On August 21, 2023, the trial court found the child to be dependent after both Parents stipulated to the finding. The court conducted the permanent custody trial the same day. Both Parents stipulated to the "grounds" portion of the permanent custody hearing. The trial proceeded on the best-interests issue.

{¶12} The trial court questioned both Parents separately to ensure they understood the effect of the stipulation and that both stipulated of their own free will. The trial court questioned Mother first, explaining that the court had options other than permanent custody; further, if Mother stipulated, she waived her right to call her own witnesses. The trial court asked, and Mother agreed, that no one promised Mother anything or threatened her in connection with the stipulation.

{¶13} The trial court also questioned Father about his stipulation, ensuring his questions were answered by his attorney and advising that the court had options other than permanent custody. The trial court ensured Father was aware of the rights he was waiving and that he understood the nature of permanent custody. The trial court asked, and Father agreed, that no one promised Father anything or threatened him in connection with the stipulation.

{¶14} Parents were represented by the same attorney at the trial. The attorney made a statement at the beginning of the trial, noting they thoroughly discussed the case and the strengths and weaknesses. Parents understood that grounds existed for a grant of permanent custody and therefore were willing to stipulate thereto.

{¶15} The trial court then proceeded to trial of the best-interest issue. The following evidence is adduced from the record of the permanent custody trial.

{¶16} The family's ongoing Caseworker testified E.G. was placed with a full blood Sibling in a foster home and has remained in that placement throughout the duration of the case, the only home E.G. has ever known. The foster parents adopted Sibling and have other children E.G. has bonded to. Caseworker testified she has observed as strong, loving bond between E.G. and the foster parents, and also between Sibling and E.G. E.G. was in the foster home for 59 days at that point, which Caseworker testified is long enough for a bond to form. Caseworker has no concerns for the child in the foster home or with the foster parents' care of E.G. The foster parents have expressed the desire to adopt E.G. if that option became available.

{¶17} Parents did propose a relative placement and Caseworker testified a home study was performed. Placement with the proposed guardian was denied on best

interests. Although the proposed guardian has visited with E.G., the child has a stronger bond with Sibling and the foster family. Caseworker testified the bond between the siblings outweighed any possible bond with extended family.

{¶18} Caseworker testified about Parents' visitation of E.G. Parents needed a lot of reassurance in caring for the child and were not focused on the child during visits. Parents have limitations and cannot parent E.G. without direct supervision.

{¶19} Caseworker testified the benefits of permanent custody outweigh the harm of breaking any bond that exists between parents and E.G. Further, Caseworker testified it is in the child's best interest for permanent custody to be granted and for the bond with Sibling to be maintained. Caseworker opined the child's current placement is positive and moving to the proposed custodian would be unnecessarily disruptive and detrimental to the child.

{¶20} Another employee of the Agency performed the home study on the proposed guardian and testified at the hearing. The home study was denied based on E.G.'s best interests because the child's bond with Sibling and the foster family is stronger than with the proposed guardian.

{¶21} The guardian ad litem (G.A.L.) testified that in his research, a bond forms between a child and a caregiver when the child is one day old. The G.A.L. testified he had no opinion on whether E.G.'s bond was stronger with the proposed guardian or with the foster family, but he was also the G.A.L. on Sibling's case and found the foster family to be a suitable placement. The G.A.L. testified he was not against placement with the foster family, but he wanted more time to decide.

{¶22} The proposed guardian, T.L., also testified at the hearing. T.L.'s contact with E.G. consists of three visits. T.L. was dismissive of any bond E.G. has formed with Sibling or the foster family, but also testified E.G. has not bonded to her at all.

{¶23} After taking the matter under advisement, on October 17, 2023, the trial court issued findings of fact granting permanent custody to the Agency and terminating Parents' parental rights.

{¶24} Parents now appeal from the trial court's decision.

{¶25} Parents raise four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶26} "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT MOTHER AND FATHER EACH VOLUNTARILY STIPULATED TO THE GRANTING OF PERMANENT CUSTODY TO SCDJFS AND THAT EACH PARENT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY AGREED TO RELINQUISH ALL PARENTAL RIGHTS OF E.G., AS SUCH FINDINGS ARE UNSUPPORTED BY THE RECORD AND VIOLATIVE OF MOTHER AND FATHER'S DUE PROCESS RIGHTS."

{¶27} "II. THE TRIAL COURT ERRED UNDER R.C. 2151.414 AND VIOLATED MOTHER AND FATHER'S DUE PROCESS PROTECTIONS BY GRANTING PERMANENT CUSTODY TO SCDJFS WITHOUT MAKING A SPECIFIC FINDING UNDER R.C. 2151.414(B) AND FAILING TO OBTAIN AN ADEQUATE STIPULATION TO THE SAME."

{¶28} "III. THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF E.G., AS SUCH A FINDING WAS

UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶29} "IV. THE TRIAL COURT ERRED BY FAILING TO MAKE A FINDINGS OF REASONABLE EFFORTS OR THAT REASONABLE EFFORTS WERE NOT REQUIRED UNDER R.C. 2151.419, AND, IF IT HAD, SUCH A FINDING WOULD BE ERRONEOUS."

**ANALYSIS**

I.

{¶30} In their first assignment of error, Parents argue the trial court erred in finding they each voluntarily stipulated to the granting of permanent custody to the Agency. We disagree.

{¶31} In the trial court's findings of fact, the trial court states each parent stipulated to permanent custody in the totality. Appellants assert they intended to stipulate only to "grounds" pursuant to R.C. 2151.414(B) permitting the trial court to grant permanent custody. The written stipulation expressly notes Parents did not voluntarily relinquish their parental rights or give permanent custody to the Agency. Agency's trial counsel asserted for the record that Parents stipulated to "grounds" only and the trial would run on the best-interests portion. The trial court's colloquy with each parent, cited at length in Parents' brief, notes the stipulation to "grounds" only.

{¶32} Civ.R. 61 prohibits a reviewing court from reversing a harmless error of the trial court and provides in pertinent part:

No error * * * or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for

granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶33} *See also,* R.C. 2309.59; *In re McCallum*, 5th Dist. Tuscarawas No. 2006AP070042, 2007-Ohio-995, ¶ 17 [application of harmless error pursuant to Civ.R. 61 to custody determination].

{¶34} Under Civ.R. 61, for this Court to find that an error is harmless, it must weigh the prejudicial effect of the error and "determine that, if th[e] error[ ] had not occurred, the * * * trier of the facts would probably have made the same decision." *In re Z.H.*, 9th Dist. No. 29926, 2022-Ohio-184, 183 N.E.3d 1223, ¶ 9, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165, 407 N.E.2d 490 (1980), internal citation omitted.

{¶35} In the instant case, we agree with appellee that the trial court protected the substantial rights of the parties and it is evident from the record and entire judgment entry that Parents stipulated to "grounds" only. We find no prejudicial effect to Parents from the trial court's imprecise language because the issue of best interests was tried and thoroughly reviewed.

{¶36} The best-interest portion of the hearing proceeded with the testimony of five witnesses, all of whom addressed the best-interests issue at length. It is evident to us upon reviewing the record and trial court's entries in their totality that the trial court, parties, and witnesses did not proceed under any mistaken belief that Parents stipulated

to permanent custody in its entirety. Nor does the trial court's analysis in its entry arise from any such stipulation;

{¶37} We agree with appellee, however, that the trial court's judgment clearly does not arise from any misunderstanding of Parents' stipulation to grounds only. Parents' first assignment of error is overruled.

II.

{¶38} In their second assignment of error, Parents argue the trial court failed to find any of the grounds for permanent custody delineated in R.C. 2151.414(B)(1). Because Parents stipulated to grounds, we disagree.

{¶39} The grounds for permanent custody are described in R.C. 2151.414(B) which states as follows:

> (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

(2) With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.

{¶40} As we addressed in our discussion of Parents' first assignment of error, they stipulated to findings that grounds for permanent custody existed. In other words, they stipulated to the grounds described in the permanent custody complaint, as described supra in our statement of the facts. We perceive Parents' argument to be that they should have stipulated to specific individual factors pursuant to R.C. 2151.414(B). We are unaware of any such requirement, and Parents do not point us to any case law or statute in support of their premise.

{¶41} Again, upon our review of the record of the case, including the complaint, written stipulations, colloquies between each Parent and the trial court, and Parents' counsel's statement at the hearing, we are readily able to discern the basis for the trial

court's finding that grounds exist for the granting of permanent custody. We agree with appellee that any further restatement of the information would defeat the purpose of the stipulations.

{¶42} Parents' second assignment of error is overruled.

III.

{¶43} In their third assignment of error, Parents argue the trial court's finding that permanent custody is in the best interests of E.G. is not supported by clear and convincing evidence and is against the manifest weight of the evidence. We disagree.

{¶44} As discussed supra, Parents waived any challenge to the trial court's finding of grounds under R.C. 2151.414(E) by stipulating on the record that the first prong of the permanent custody test was satisfied. The parties litigated only whether permanent custody was in the best interests of the child. Although Parents effectively conceded they were not able to provide E.G. with a suitable home at that time, they argued E.G. should be placed with their proposed legal guardian, T.L.

{¶45} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.)

{¶46} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

*Permanent Custody Determination*

{¶47} R.C. 2151.414(B)(1)(a) states in relevant part that permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and the child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶48} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had

sufficient evidence before it to satisfy the requisite degree of proof." Cross at 477, 120 N.E.2d 118.

*Best Interests*

{¶49} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶50} The juvenile court has considerable discretion in weighing these factors. *In re D.A.*, supra at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

{¶51} Parents argue the trial court abused its discretion in finding permanent custody to be in the best interest of E.G. because it placed too much emphasis on the bond between E.G. and Sibling, and not enough weight on maintaining a relationship between Parents and E.G. via legal custody to T.L.

{¶52} No single factor is given greater weight or heightened significance. *Matter of K.B.*, 5th Dist. Stark No. 2023 CA 00072, 2024-Ohio-491, ¶ 61, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57. In the instant case, the trial court's decision was premised upon E.G.'s placement in a positive, adoption-oriented foster home with Sibling and denial of the home study for T.L. Parents' argument is premised upon the unsupported assumption that placement with T.L. would have maintained bonds with Parents when there is no evidence Parents were capable of maintaining that bond,

especially because they stipulated to significant negative facts in the permanent custody complaint.

{¶53} We review a trial court's best interest determination under R.C. 2151.414(D) for an abuse of discretion. *In re G.B.*, 5th Dist. Stark No. 2023CA00120, 2023-Ohio-4757, ¶ 11, citing *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. A trial court's failure to base its decision on a consideration of the best interest of the child constitutes an abuse of discretion. *G.B.,* supra, citing *In re R.S.*, 8th Dist. Cuyahoga No. 111353, 2022-Ohio-4387, ¶ 45 (Citation omitted). An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶54} Parents argue the trial court's finding that permanent custody is in E.G.'s best interest is against the manifest weight of the evidence because the G.A.L. advocated for allowing more time to investigate T.L. as a placement option. We note, however, that the trial court is required to consider the benefit of permanency for E.G., and the foster family provided a positive placement for E.G. and Sibling with a goal toward adoption. Caseworker testified the foster family's home is the only home E.G. has ever known; the foster family has adopted E.G.'s full-blood Sibling; E.G. has bonded with other children in the home; and the foster family has expressed the hope to adopt E.G.

{¶55} Parents have limitations which prevent them from parenting E.G. without significant direct supervision. Their proposed guardian, T.L., has visited the child three times and was dismissive of the child's bonds with Sibling, the foster family, and even T.L. herself. Although the G.A.L. recommended further investigation, the trial court is not

required to follow the recommendations of the G.A.L. Ultimately the juvenile court determines the credibility and weight to give to the G.A.L.'s report and is not compelled to follow the G.A.L.'s recommendation; the juvenile court must decide what is in the child's best interest after considering all the evidence presented. *In re B.F.*, 6th Dist. No. OT-23-020, 2023-Ohio-4238, 229 N.E.3d 679, ¶ 161, internal citations omitted.

{¶56} Upon hearing all of the evidence and considering the witnesses' testimony, the trial court found permanent custody to the Agency to be in E.G.'s best interests and we find no abuse of discretion. A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re A.R.*, 5th Dist. Stark No. 2022CA00148, 2023-Ohio-1359, ¶ 51, citing *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, ¶ 101, internal citations omitted.

{¶57} The trial court found reunification with Parents and placement with T.L. was not in E.G.'s best interest. The child is doing well with Sibling and the foster family, which may lead to adoption. Caseworker recommended permanent custody of the child to the Agency. Any harm caused by severing any bond with Parents is outweighed by the benefits of permanence for the child. See, *Matter of W.W.,* 5th Dist. Licking No. 2023 CA 00057, 2023-Ohio-4112, ¶ 30.

{¶58} Upon review, we find sufficient clear and convincing evidence to support the trial court's decision to grant the Agency's motion for permanent custody, and do not

find any manifest miscarriage of justice. We further find there is competent, credible evidence to support the juvenile court's decision that it was in the best interest of the child to be placed in the permanent custody of the Agency, and that decision is not an abuse of the trial court's discretion. See, *Matter of C.T.*, 5th Dist. Stark No. 2023CA00119, 2024-Ohio-212, ¶ 43.

{¶59} Parents' third assignment of error is overruled.

IV.

{¶60} In their fourth assignment of error, Parents argue the trial court erred in failing to find the Agency made reasonable efforts pursuant to R.C. 2151.419. We disagree.

{¶61} First, we note the trial court found the Agency made reasonable efforts to prevent placement and/or make it possible for E.G. to return home in its Shelter Care/Pre-Disposition Entry of June 14, 2023.

{¶62} Parents stipulated to the fact that they lost custody of an older child, an element which established one of the grounds in the permanent custody complaint. As appellee points out, the motion for permanent custody in the instant case arose from Parents losing involuntary permanent custody of Sibling. The specific requirement to make reasonable efforts that is set forth in R.C. 2151.419(A)(1) does not apply in an R.C. 2151.413 motion for permanent custody. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 4. Reasonable efforts are therefore not required pursuant to R.C. 2151.419(A)(2)(e). R.C. 2151.419 addresses permanent custody hearings, and states in pertinent part:

(A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home,

eliminate the continued removal of the child from the child's home, and return the child to the child's home:

* * *

(e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections.

{¶63} In the instant case, Sibling was removed from Parents' custody and their parental rights involuntarily terminated prior to the birth of E.G.. The circumstances leading up to the award of permanent custody of Sibling to the Agency persisted. *In re Baby Girl O.*, 5th Dist. No. 2023 AP 04 0029, 2023-Ohio-4323, 229 N.E.3d 1287, ¶ 24. In fact, there was clear and convincing evidence that the circumstances remained and would not be remedied. *Id.*

{¶64} Finally, Parents failed to raise any reasonable-efforts argument before the trial court during the hearing on permanent custody. Parents never raised this issue at the trial court level and therefore, have waived it for purposes of appeal. *In re L.J.R.*, 5th Dist. Richland No. 2022 CA 0030, 2022-Ohio-3418, ¶ 47.

{¶65} Parents' fourth assignment of error is overruled.

**CONCLUSION**

{¶66} Parents' four assignments of error are overruled and the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.


By: Delaney, P.J.,

Gwin, J. and

Hoffman, J., concur.